FRANKLIN SAVINGS ASSOCIATION
and Franklin Savings Corporation,
Plaintiffs–Appellees,

v.

T. Timothy RYAN, Jr., Director of the
Office of Thrift Supervision; M. Danny
Wall, Previous Director of the Office of
Thrift Supervision, Defendants–Appellants.

FRANKLIN SAVINGS ASSOCIATION
and Franklin Savings Corporation,
Plaintiffs–Appellees,

v.

M. Danny WALL, Previous Director of
the Office of Thrift Supervision; T.
Timothy Ryan, Jr., Director of the Office of Thrift Supervision, Defendants–
Appellants,

and

David Douglass, Commissioner, Kansas
Savings and Loan Department; United
States of America, Defendants.

Nos. 90–1481, 90–1485.

United States Court of Appeals,
Fourth Circuit.

Argued July 18, 1990.

Decided Jan. 7, 1991.

Charlotte M. Kaplow, Asst. Chief Counsel (argued) (Harris Weinstein, Chief Counsel, Thomas J. Segal, Associate Chief Counsel, Office of the Chief Counsel, Office of Thrift Supervision, Paul W. Grace, Paul J. Kennedy, Graham & James, Washington, D.C., Jerry William Boykin, Thompson & McMullen, Alexandria, Va., on brief), for defendants-appellants.

Daniel D. Crabtree (argued), Stinson, Mag & Fizzell, Kansas City, Mo. (John Jay Range, Hunton & Williams, Washington, D.C., on brief), for plaintiffs-appellees.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The proceedings herein are collateral to an action that, at the time of argument, was pending in the United States District Court for the District of Kansas, an action filed by the appellee Franklin Savings Association of Ottawa, Kansas ("Franklin"), to remove the conservator Resolution Trust Corporation appointed by M. Danny Wall, Director of the Office of Thrift Savings

(OTS).[1] The appointment, by the Director, of the conservator and the action begun by Franklin to set aside that appointment were both filed pursuant to the provisions of 12 U.S.C. § 1464(d)(2)(E). Franklin in its complaint in the Kansas action alleged that the appointment of the conservator had been made arbitrarily and capriciously and represented an abuse of discretion on the part of the Director. Wall, as Director, answered the complaint, and OTS filed the administrative record in the proceeding on which the appointment of the conservator had been based.

■ Wall moved, at this point, that the action proceed solely on the administrative record as filed. Franklin objected to limiting inquiry to the administrative record, contending that the administrative record was incomplete. The objections of Franklin were referred by the district judge to a magistrate who, after a hearing, found that there had been a sufficient showing by Franklin that

> the administrative record as presented may be incomplete and that there may be evidence or documents which were available for review by the agency but not reviewed, or which were reviewed and not relied upon by the agency, or which were reviewed and relied upon by the agency but not contained in the "administrative record".

Discovery was then begun by Franklin in support of its position. The depositions of

many employees and officers of OTS were taken, and thousands of records were produced. In the course of this discovery, Franklin gave appropriate notice for the taking of the deposition of Wall and issued a subpoena in the Eastern District of Virginia requiring his attendance. Wall and OTS immediately moved in the District Court for the Eastern District of Virginia to quash the subpoena. The motion to suppress was referred by the district judge to a magistrate, and the magistrate recommended that the motion be dismissed, relying primarily on the earlier decision of the Kansas magistrate. On appeal, the district judge affirmed the magistrate's recommendation, and on motion for reconsideration declared that Franklin would be allowed "to ask at the deposition of Wall questions relating to why he imposed the conservator-ship, the information upon which he relied, and the sources of that information, including the conversations he had with others obtaining information about the plaintiff."

After unsuccessfully seeking an appeal of the district court's order denying suppression of the subpoena, Wall responded to the subpoena and answered all questions directed at him with the exception of five. Those not answered were direct inquiries about the decision-making processes used to appoint the conservator, including the opinions and recommendations of subordinate employees and "the mental processes" used by Wall himself in making the decision.[2] Although Wall believed that

---

1. Since oral argument, the primary case has been decided adversely to Wall and OTS. *Franklin Savings Ass'n v. Office of Thrift Supervision*, 742 F.Supp. 1089 (D.Kan.1990). The court ordered OTS to remove the conservator, finding that its imposition had been "arbitrary and capricious." *Id.* at 1127. The court, though, noted that OTS's actions could not "be characterized as biased or prejudicial against Franklin or taken in bad faith." *Id.* at 1124.

Also during the pendency of this proceeding, Wall resigned as Director of OTS, and he has since been replaced by Timothy Ryan.

2. The questions to which OTS and Wall objected and which Wall refused to answer were:

Q. Mr. Wall, why did you decide to impose a conservatorship upon Franklin Savings Association?

    *    *    *    *    *    *

Q. What information did you rely upon in deciding to impose a conservatorship upon Franklin?

    *    *    *    *    *    *

Q. What were the sources of the information upon which you based your decision to placed [sic] Franklin under conservatorship?

    *    *    *    *    *    *

Q. Did you have any conversation with anyone at the OTS about placing Franklin into a conservatorship?

    *    *    *    *    *    *

Q. Did anyone at the OTS provide you with any information about Franklin that led you to put them [sic] into a conservatorship?

Franklin was not entitled to probe into the areas covered by these five questions, the district court, after a hearing, found that these questions were appropriate, largely because of the prior decision in the primary Kansas action. Wall was ordered by the court to answer the five questions, and when he refused an order of civil contempt was entered against him. It is from that order that this appeal is taken.

We are of opinion that the district judge erred in ordering the defendant to answer the five questions to which OTS and Wall objected. These questions clearly went to the mental processes by which Wall arrived at his decision to appoint the conservator and they also sought information about the advice given Wall by his subordinates. Such questions, absent extraordinary circumstances, are clearly improper and inadmissible. That this is so was made clear in *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), in which Justice Frankfurter, speaking for the Court, said:

> Over the Government's objection the district court authorized the market agencies to take the deposition of the Secretary [of Agriculture]. The Secretary thereupon appeared in person at the trial. *He was questioned at length regarding the process by which he reached the conclusion of his order, including the manner and extent of his study of the record and his consultation with subordinates.* His testimony shows that he dealt with the enormous record in a manner not unlike the practice of judges in similar situations, and that he held various conferences with the examiner who heard the evidence. Much was made of his disregard of a memorandum from one of his officials who, on reading the proposed order, urged considerations favorable to the market agencies. *But the short of the business is that the Secretary should never have been subjected to this examination.* The proceeding before the Secretary "has a quality resembling that of a judicial proceeding." Such an examination of a judge would be destructive of judicial responsibility.... Just as a judge cannot be subjected to

such a scrutiny, ... so the integrity of the administrative process must be equally respected.

*Id.* at 421–22, 61 S.Ct. at 1004 (emphasis added; citations omitted).

██ Since *Morgan,* federal courts have consistently held that, absent "extraordinary circumstances," a government decision-maker will not be compelled to testify about his mental processes in reaching a decision, "including the manner and extent of his study of the record and his consultations with subordinates." *Id. See Simplex Time Recorder Co. v. Secretary of Labor,* 766 F.2d 575, 586 (D.C.Cir.1985); *Sweeney v. Bond,* 669 F.2d 542, 546 (8th Cir.), *cert. denied,* 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); *Kyle Engineering Co. v. Kleppe,* 600 F.2d 226, 231–32 (9th Cir.1979); *Warren Bank v. Camp,* 396 F.2d 52, 56 (6th Cir.1968); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 325–26 (D.D.C.1966), *aff'd,* 384 F.2d 979 (D.C.Cir.), *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). Typical of these decisions is *Carl Zeiss,* in which the court said:

> The judiciary, the courts declare, is not authorized "to probe the mental processes of an executive or administrative officer. This salutary rule forecloses investigation into the methods by which a decision is reached, the matters considered, the contributing influences, or the role played by the work of others— *results demanded by the exigencies of the most imperative character.* No judge could tolerate an inquisition into the elements comprising his decision—indeed, "[s]uch an examination of a judge would be destructive of judicial responsibility"—and by the same token "the integrity of the administrative process must be equally respected."

*Id.* at 325–26 (emphasis added; footnotes omitted).

Only where there is a clear showing of misconduct or wrongdoing is any departure from this rule permitted. This principle was well expressed in *Feller v. Board of Educ. of Conn.,* 583 F.Supp. 1526, 1528 (D.Conn.1984):

As a matter of hornbook administrative law:

> In reviewing a decision of an administrative agency, it is *not* the proper function of the court to probe the mental processes of the agency or its members.... Such probing should ordinarily be avoided, and there must be a *strong showing* of bad faith or improper behavior before such inquiry may be made.

(Emphasis added.) There is no contention of any misconduct or wrongdoing on the part of Wall in connection with his decision to appoint a conservator.[3] Under such circumstances, there is no basis for a departure from the firm rule announced in *United States v. Morgan, supra.* The conclusion of civil contempt herein is accordingly vacated and set aside.

VACATED.

---

**3.** For an illustration of a situation in which there is a *prima facie* showing of misconduct, see *Singer Sewing Machine Co. v. NLRB,* 329 F.2d 200, 208 (4th Cir.1964). That case was cited here but as Judge Winter correctly opined, when ruling on a motion to stay the decision of the district court herein that Wall could be deposed, *Singer* is inapplicable here because no showing of *prima facie* misconduct on the part of Wall has been shown. Jt.App. 844.