**Walter J. THOMAS, Appellant,**

v.

**James BAKER, in His Official Capacity as Secretary of State.**

**No. 89–5376.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1991.

Decided Feb. 22, 1991.

Leslie M. Turner, with whom Michael J. Madigan and Dennis R. Race, Washington, D.C., were on the brief, for appellant.

Richard N. Reback, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before BUCKLEY, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

In this appeal from an order granting summary judgment in favor of the Secretary of State, we affirm Judge Revercomb's decision rejecting appellant Walter J. Thomas's challenge to the process by

which he was "selected out" of the United States Foreign Service. 717 F.Supp. 878.

The foreign service assists the President and the Secretary in conducting foreign affairs. Mr. Thomas entered the foreign service as a candidate for career membership in 1977. Career candidates have five years to demonstrate their qualification for career membership in the foreign service. 22 U.S.C. § 3949(a). During their probationary period, the candidates are evaluated and annually ranked within their salary class. *See id.* § 3946(a).

Mr. Thomas did not fare particularly well in these reviews. From 1978 through 1982, while he was serving in the consulate in Rio de Janeiro, Brazil, and in the embassy in Accra, Ghana, he was ranked in the lower or middle tiers of his salary class (class 03). The State Department's Commissioning and Tenure Board did not recommend him for tenure as a career member in 1981 or 1982. Mr. Thomas therefore pursued an alternative route to tenure by taking and passing an oral examination. Through this procedure, Mr. Thomas received a commission and was tenured as a career member of the foreign service in March 1983.

█ The first question presented to us arises because in July 1983, three months after Mr. Thomas gained tenure, one of the State Department's Selection Boards recommended to the Department's Performance Standards Board that Mr. Thomas be terminated in view of his comparatively poor performance in the past. Further proceedings, culminating in the decision of the Department's Special Review Board, led to Mr. Thomas's involuntary separation. Mr. Thomas claims that Foreign Affairs Manual Circular 83–10, Attachment 1, Part II, § C, barred the Selection Board from considering him for selection-out until he had served at least one year as a tenured foreign service officer. The circular, so far as pertinent, reads:

> All career members of the Foreign Service who have been in present class or previous equivalent class for a total of 1 year or more ... will be reviewed for possible referral to an appropriate Performance Standards Board for consideration for selection-out for failing to maintain the standards of performance for their class....

Mr. Thomas's view of this provision could prevail only if "class" referred back to "career members." The State Department, however, interprets class to mean "salary class." Other portions of the circular, unnecessary to recount, use the term "class" to mean the same. *E.g., id.* Attachment 1, Part I, § B. Since Mr. Thomas had been in salary class 03 since 1977 and was a career member when selected-out, he was within the language of the circular as the State Department interprets it. Like Judge Revercomb, we see no basis for disturbing the agency's reading of its own circular. *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977). The Foreign Service Act uses the terms "class" and "salary class" interchangeably. 22 U.S.C. §§ 3963, 3964, 3966. The State Department is certainly within bounds to read the same term in its own circular in the same way, particularly since selection boards are charged with the duty of ranking "the members of a salary class" (22 U.S.C. § 4002(a)).

Mr. Thomas complains that this is not the way the Department handles career members who, if not promoted to the senior foreign service after a certain period of time, get designated for mandatory retirement. It is true that for this purpose, the Department measures the time period (as much as 22 years) from the date the individual became a career member. But that is because the regulation specifically starts the clock ticking "from the date of commission or tenure." *See* 3 FOREIGN AFFAIRS MANUAL ("FAM") § 737.2a. The circular governing Mr. Thomas's situation contains no comparable provision.

We do not agree with Mr. Thomas that the Department's interpretation of the circular would lead to irrational results. As the district court pointed out, the Department sensibly believed that it could best evaluate foreign service officers by comparing them to other members in their class, without regard to when the officer

was granted tenure. Moreover, that is what the statute appears to contemplate. 22 U.S.C. §§ 4002, 4008.

Mr. Thomas complains that there is no other instance in which the circular was applied in this manner. But he has pointed to no instance in which the Department, confronted with circumstances analogous to this case, acted differently. Absent such evidence, a court presumes the regulation was applied consistently and in good faith. *See Hercules, Inc. v. Environmental Protection Agency,* 598 F.2d 91, 123 (D.C.Cir.1978).

■ The remaining claims require a somewhat more detailed recital of the course of proceedings involving Mr. Thomas. The Selection Board recommended, and the Performance Standards Board agreed, that Mr. Thomas should be terminated. The Performance Standards Board reviews a career member's personnel record and compares his performance to no less than ten other members of the foreign service randomly selected from the same salary class and "occupational category." 3 FAM § 730, Attachment 1, § 3.c (Nov. 22, 1982). If the Performance Standards Board decides that removal is appropriate, as it did in Mr. Thomas's case, the career member may seek a full evidentiary hearing before the Special Review Board, the final stage of review. 3 FAM § 730, Attachment 2, §§ 1 & 4 (Jan. 1, 1983).

This is the course Mr. Thomas pursued. In preparation for the evidentiary hearing before the Special Review Board, he sought discovery of the job performance files of the ten persons the Performance Standards Board used in comparing his record. When the Special Review Board denied his request, he sought to compel the testimony of two members of the Performance Standards Board in order to ascertain whether that body had properly compared his job performance to ten others. He also sought to compel the testimony of Dr. Ernest Holmes, a member of the Selection Board, in order to show that while considering him, other Selection Board members made inappropriate derogatory comments and relied on hearsay and personal opinions in violation of Department regulations. The Special Review Board's denial of these requests, Mr. Thomas argues, warrants setting aside the Board's decision terminating him.

As to the Special Review Board's refusal to disclose the files of other foreign service officers, the State Department, relying on 22 U.S.C. § 4004, claims that such personnel records are confidential, subject to inspection only by the President, the Secretary of State, designated officials of the Secretary such as members of boards conducting performance reviews, and Congress. We see no reason to consider Mr. Thomas's contrary arguments. He did not raise this issue below and the district court did not pass on it. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).

Mr. Thomas's other objections are not well-taken. The Special Review Board did not abuse its considerable discretion in conducting the hearing when it refused to compel the testimony of two members of the Performance Standards Board and of one member of the Selection Board. These are deliberative bodies. Their deliberations are not evidence and their members are not "adverse witnesses" when they issue a written decision or recommendation adverse to a career member of the foreign service. The Special Review Board found that it would interfere with the functioning of these bodies if, after performing their duties, their members would be subject to interrogation about how they reached their decisions. This was certainly a reasonable conclusion. "Such an examination of a judge would be destructive of judicial responsibility." *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941) (*"Morgan IV"*). The Special Review Board cannot be faulted for its conclusion that "the integrity of the administrative process must be equally respected." 313 U.S. at 422, 61 S.Ct. at 1005.

We therefore agree with Judge Revercomb that, at least in the absence of evidence of administrative irregularity—and Mr. Thomas offered none, the refusal of the Special Review Board to force these individuals to testify did not violate Mr. Thomas's right to due process of law.

Mr. Thomas's remaining contentions, which we have considered and rejected, do not merit discussion.

*Affirmed.*