**Myra J. WALKER, Plaintiff,**

v.

**NCNB NATIONAL BANK OF FLORIDA, Defendant.**

**Misc. No. 92–33.**

United States District Court, District of Columbia.

Jan. 19, 1993.

John F. MacLennan of Smith, Hulsey, & Busey, Jacksonville, FL, for plaintiff.

Thomasina V. Rogers, Legal Counsel, David G. Liss and Gilah G. Goldsmith of the EEOC, Washington, DC, for E.E.O.C.

Paul R. Monsees of Foley & Lardner of Washington, DC (Richard F. Kane and Michael V. Matthews of Blakeney & Alexan-

der, Charlotte, NC, of counsel), for defendant NCNB Nat. Bank of Florida.

Jay B. Stephens, U.S. Atty. for the District of Columbia, John Bates, and Claire Whitaker, Asst. U.S. Attys., Washington, DC, for defendants.

MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

The above-captioned case comes before this Court for review of the Report of the Special Master. Because the Court finds that the legal conclusions and factual findings of the Special Master were correct, the Court adopts the Report of the Special Master and his findings and conclusions.

I. BACKGROUND

The Plaintiff, Myra Walker ("Walker"), filed an employment discrimination charge against the Defendant, NCNB National Bank of Florida ("NCNB"), with the Miami District Office of the Equal Employment Opportunity Commission ("EEOC"). The District Office found no reasonable cause to believe that Walker had been subjected to discrimination. Walker sought a review of this decision in the EEOC's Office of Determinations Review Program ("DRP") in Washington, D.C.

On December 4, 1990, Walker filed a discrimination suit against the Defendant, NCNB, in the Middle District of Florida. The next day, the DRP issued a letter of determination ("the Letter"), finding reasonable cause to believe NCNB had discriminated against Ms. Walker. The Letter was signed by James H. Troy, ("Troy"), Director of the Office of Program Operations.

On January 16, 1992, the Defendant served Troy with a subpoena duces tecum. At the deposition Mr. Troy refused to answer questions regarding the Letter, including questions about the procedure that was followed in the Letter's formulation and the basis for the determination of reasonable cause. The Defendant filed a Motion to Compel Discovery in this Court, and the EEOC sought to quash the subpoena.

This Court referred the dispute to Magistrate Judge Howard Snyder of the Middle District of Florida, whom this Court appointed as a Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure. On September 29, 1992, the Special Master issued his Report in this discovery dispute. The Defendant subsequently filed a number of objections to the Report of the Special Master. After a hearing and thorough review of the Defendant's objections, this Court must conclude that the Report of the Special Master is accurate in both its findings of fact and conclusions of law and adopts in whole the Report of the Special Master.

II. THE SPECIAL MASTER CORRECTLY ARTICULATED, AS THE DEFENDANT CONCEDES, THAT THE "HIGH GOVERNMENT OFFICIAL" DOCTRINE AND THE "DELIBERATIVE PROCESS" PRIVILEGE NORMALLY PRECLUDE INQUIRY INTO THE DECISION–MAKING PROCESS OF GOVERNMENT OFFICIALS.

The Special Master concluded that two doctrines prevented the Defendant from deposing Troy. The Defendant conceded that the Special Master correctly articulated both doctrines. *See Defendant's Objections to Report of Special Master*, at 7, 14. Because the Special Master correctly described these doctrines in his Report and the parties do not object to that description, the Court will only briefly set forth the doctrines here.

■ The first doctrine is known as the "high government official" doctrine. The doctrine, first set out in *Morgan v. United States*, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938), protects government officials from being compelled, absent extraordinary circumstances, to testify about their reasons for taking official actions. The rationale for the doctrine is that subjecting officials to interrogation about how they reached particular decisions would impair that decision-making process by making officials less willing to explore and discuss all available options, no matter how controversial. *Thomas v. Baker*, 925 F.2d 1523,

1525 (D.C.Cir.1991). Consequently, inquiry into the decision-making process is permitted only upon "a clear showing of misconduct or wrongdoing." *Franklin Savings Ass'n v. Ryan*, 922 F.2d 209 (4th Cir.1991).

 The second doctrine put forward by the EEOC as providing a reason not to permit the deposition of Mr. Troy is that the information sought falls within the "deliberative process" privilege. This privilege protects material disclosing the deliberative process, including evaluations, expressions of opinion, and policy recommendations. To apply, the privilege must be asserted by the head of the agency about which information is sought, after personal consideration of the material allegedly covered by the privilege. In order to overcome the privilege, the party seeking disclosure must show that the interests in disclosure outweigh the interests in non-disclosure. *Bigelow v. District of Columbia*, 122 F.R.D. 111, 113 (D.D.C.1988) (discussing the relevant case law). The Court should consider the interest in accurate judicial fact-finding, the relevance of the evidence sought, the effect disclosure will have on future deliberations by the agency involved, and the role of the government in the litigation. *See In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C.Cir.1992).

### III. THE SPECIAL MASTER CORRECTLY CONCLUDED THAT BOTH THE "HIGH GOVERNMENT OFFICIAL" DOCTRINE AND "DELIBERATIVE PROCESS" PRIVILEGE ENABLE THE EEOC TO SAFEGUARD THE PROCESS BY WHICH THE EEOC INVESTIGATES CHARGES OF DISCRIMINATION.

 The Special Master determined, after examining the facts of this case, that both the "high government official" doctrine and the "deliberative process" privilege applied and the EEOC could prevent the Defendant from questioning Mr. Troy regarding the formulation, creation, and drafting of the Letter. The Special Master found that questions about the methods by which the decision to issue the Letter was reached, the matters considered, the contributing influences, and the role played by the work of others were all intimate parts of the decision-making process.

First, with respect to the "high government official" doctrine, the Court agrees with the Special Master that the Defendant has failed to make a clear showing of misconduct or wrongdoing to warrant making inquiries into the reasons for the issuance of the Letter. The Defendant asserts that a deposition of Mr. Troy will show that he was guilty of misconduct because he is not familiar with the facts of the investigation leading up to the issuance of the Letter. However, the Defendant has failed to put forward any admissible evidence of this misconduct.

The Defendant alleges that the Special Master improperly failed to admit the statement of Kathy Collins in support of its assertion that Mr. Troy was unfamiliar with the details of the investigation. Ms. Collins, present at Mr. Troy's deposition, allegedly heard him say that he had not seen the investigation documents before.

Correctly, the Special Master did not receive the statement of Ms. Collins into evidence. The hearsay statement of Mr. Troy was not a declaration falling within the state of mind exception of Rule 803(3) of the Federal Rules of Evidence, as the Defendant asserts, because Rule 803(3) does not encompass "a statement of memory or belief [intended] to prove the fact remembered or believed." Mr. Troy's alleged statement directly relates to his memory of whether he had seen the relevant documents before.

Furthermore, the alleged statement does not fall within the "statement against interest" exception set out in Rule 804(b)(3). Mr. Troy's alleged statement was not against his pecuniary or proprietary interest, nor would it have subjected him to civil or criminal liability. Consequently, because the hearsay statement of Ms. Collins does not fall within any hearsay exception recognized by the Federal Rules of Evidence, the Special Master acted properly in not receiving the statement into evidence. No other evidence in support of the charge

of misconduct was submitted by the Defendant.

Even if the statement of Ms. Collins were properly admissible, the Court is unconvinced that such evidence would show misconduct on the part of Mr. Troy. A statement by a government official that he was unfamiliar with all of the documentation contained within a file that was compiled over a year before does not indicate misconduct on the part of that official. Indeed, the Defendant recognizes that a substantial amount of similar delegation of duty occurs on a daily basis at the EEOC. *See Defendant's Objections to Report of Special Master,* at 15. Requiring a signing official to be intimately familiar with the minutiae of the many documents involved in an investigation of this kind, over a year after the investigation, is unreasonable and contrary to the concept of delegation of responsibility.

Second, the information sought clearly falls within the "deliberative process" privilege as well. The information relates directly to the manner by which the EEOC arrived at the decision to issue the Letter finding reasonable cause to suspect that the Plaintiff in this case was subjected to discrimination. The Defendant does not dispute that the material sought is a product of deliberative process. Further, the Defendant has failed to show that the benefits of disclosure outweigh the EEOC's interest in nondisclosure in this case.

The EEOC has a strong interest in keeping its investigations confidential. The threat of disclosure may discourage free deliberations on pending charges. Furthermore, "the often sensitive nature of allegations of discrimination requires a certain measure of confidentiality of EEOC investigations so that the agency may effectively perform its function." *Report of the Special Master,* at 11.

The Defendant's interests in disclosure do not outweigh the EEOC's interests in confidentiality. The Defendant alleges that it needs to know the process by which the decision to issue the Letter was reached because the Letter will be used as evidence in the Plaintiff's prosecution of her discrimination case against the Defendant. However, as the Special Master noted, the factual basis and materials on which the EEOC issued the Letter have already been made available to the Defendant. The Defendant may attack the Letter, if it can, through presentation of contrary evidence at trial. Furthermore, the Special Master correctly concluded that the Defendant has ample means through which to seek the exclusion of the Letter from evidence at trial.

Finally, the role of the government in this litigation is minimal. The Letter, by itself, does not subject the Defendant to liability. The EEOC has no direct involvement in the suit with the exception of the instant dispute regarding Mr. Troy's deposition. Consequently, considering the interests of the Defendant, the interests of the EEOC, and the balancing thereof, the Court must conclude that the "deliberative process" privilege protects the information sought from the EEOC.

## IV. CONCLUSION

Upon consideration of the Report of the Special Master, the Defendant's Objections thereto, the EEOC's Response to the Defendant's Objections, the applicable law, and the record herein, the Court finds that the Special Master was correct in concluding that the information sought from Mr. Troy by the Defendant falls within both the "high government official" doctrine and the "deliberative process" privilege. Consequently, the Court adopts the Report of the Special Master in whole pursuant to Rule 53(e)(2) of the Federal Rules of Civil Procedure. The Court will deny the Defendant's Motion to Compel, consequently mooting the EEOC's Motion to Quash.