**David L. MORRISON, Plaintiff–Appellant,**

v.

**AMWAY CORPORATION, n.k.a. Alticor, Inc., a Michigan Corporation, Magic Carpet Aviation, a Delaware Corporation, et al., Defendants–Appellees.**

No. 02–11690.

United States Court of Appeals, Eleventh Circuit.

March 5, 2003.

---

Daniel J. O'Malley, Orlando, FL, for Plaintiff–Appellant.

Brian Douglas DeGailler, Donald E. Christopher, Litchford & Christopher, P.A., Orlando, FL, for Defendants–Appellees.

Before TJOFLAT and BLACK, Circuit Judges, and NANGLE[*], District Judge.

BLACK, Circuit Judge:

Appellant David L. Morrison appeals the district court's order dismissing his action under the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601–2654, for lack of subject matter jurisdiction. We write to address a single issue: when reviewing a defendant's motion to dismiss an FMLA action on grounds that the plaintiff was not an "eligible employee" under the Act, should the district court review the motion using the standards applicable for

---

[*] Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

Rule 12(b)(1) of the Federal Rules of Civil Procedure or Rule 56? The district court in this case used the 12(b)(1) standard, which is far less deferential to the plaintiff. We conclude the court should have used Rule 56, and we reverse and remand.

## I.

### A.

Appellant was employed by Magic Carpet Aviation (Magic Carpet) as a charter pilot based in Orlando, Florida, from September 1997 through March 2000. Magic Carpet, which is owned by Amway Corporation (Amway) [1], is an air charter service whose clientele includes a number of professional sports franchises. One such franchise is Orlando Magic, Ltd., which owns and operates the Orlando Magic basketball team. One of Appellant's main job responsibilities at Magic Carpet was piloting charter flights for the Orlando Magic. Orlando Magic, Ltd., is a unit of RDV Sports, Inc. (RDV). Amway and RDV are both owned by Richard DeVos or his family.[2]

Appellant alleges that, throughout the duration of his employment with Magic Carpet, he was suffering from clinical depression. In October 1999, Appellant met with Harry Mitchel, who was Magic Carpet's Director of Aviation and Appellant's supervisor, and requested four weeks' time off from work in order to treat his illness. He also submitted a written request for time off. Despite the requests, Mitchel would only agree to allow Appellant two weeks off. About a month later, Appellant again asked Mitchel for time off. This time, Mitchel allegedly denied the request altogether.

In March 2000, Mitchel confronted Appellant in regard to pornographic images found on Appellant's office computer in violation of Magic Carpet's company policy. Appellant indicated he was depressed and asked for time off "to deal with" his depression. Rather than giving Appellant time off, Magic Carpet terminated Appellant's employment. Appellant maintains that Magic Carpet's stated reason for firing him—storing pornography on his computer—was a pretext for unlawful retaliation for asserting his FMLA rights.

### B.

On June 22, 2001, Appellant filed this action against Amway, Magic Carpet, RDV, and Mitchel, claiming unlawful retaliation in violation of the FMLA. His complaint asserted that, during the relevant time period, he had been employed by "Amway, RDV, and/or Magic Carpet." Alternatively, he alleged Amway, RDV, and Magic Carpet were his "joint employer" and/or his "integrated employer." On August 10, 2001, Appellees moved to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The motion argued the district court lacked subject matter jurisdiction because Appellant was not an "eligible employee" under the FMLA. The district court agreed and dismissed the action. Appellant then commenced this appeal.

## II.

### A.

The FMLA entitles an eligible employee to take up to 12 weeks of leave in a 12–month period for the birth or adoption of a

---

1. While this action was pending in the district court, Appellant substituted "AMWAY CORPORATION n.k.a ALTICOR, INC." in place of "AMWAY CORPORATION."

2. The record is unclear as to whether the DeVos family had full or partial ownership of Amway and/or RDV. It is unimportant to the issue raised on appeal.

child, or the serious health condition of the employee or the employee's child, spouse, or parent. 29 U.S.C. § 2612(a)(1). To protect this right, the FMLA prohibits an employer from interfering with an employee's attempt to take leave or retaliating against an employee for opposing practices made unlawful under the FMLA. *Id.* § 2615. The FMLA authorizes an aggrieved eligible employee to sue for monetary and equitable relief from an employer who violates § 2615. *Id.* § 2617(a).

29 U.S.C. § 2611, which sets forth the scope of coverage for the FMLA, generally defines an "eligible employee" as one who has been employed for at least 12 months by the employer and for at least 1,250 hours of service with the employer during the previous 12–month period. 29 U.S.C. § 2611(2)(A). Excluded from the general definition of "eligible employee," however, is "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." *Id.* § 2611(2)(B). This is commonly known as the FMLA's "worksite" requirement.

### B.

The issue in this case is whether Appellant was precluded from being an "eligible employee" based on his alleged failure to satisfy the worksite requirement. In other words, the parties do not dispute that Appellant otherwise satisfied the FMLA's definition of "eligible employee." The only question is whether Appellant worked for an employer who employed 50 or more employees within 75 miles of his worksite. That question turns on whether RDV was Appellant's "employer," because neither Magic Carpet nor its parent corporation Amway[3], individually or collectively, employed 50 or more employees within 75 miles of Appellant's worksite. RDV, however, *did* employ at least 50 employees within 75 miles of the worksite. Consequently, if RDV were Appellant's employer, then he would be an eligible employee under the FMLA.

### C.

In answering Appellees' motion to dismiss, Appellant produced his own deposition and those of both Mitchel and Lorisse Garcia, who was the Vice President of Human Resources for Orlando Magic, Ltd. Relying mainly on these depositions, Appellant noted a number of facts which he contended demonstrated his employment relationship with RDV.[4]

Additionally, Appellant opposed the motion to dismiss on procedural grounds. He

---

3. Appellees conceded that Amway and Magic Carpet were both Appellant's employer for purposes of counting the number of employees within 75 miles of Appellant's worksite.

4. Chief among these were:
   - Appellant attended an RDV meeting and introduced himself as an RDV employee;
   - Appellant received an identification badge, parka, and necktie bearing RDV's logo, which he wore when flying the Orlando Magic;
   - Appellant received a bonus following the 1998–99 Magic basketball season. (Appellees assert the bonus was a voluntary gift from the Magic players, not RDV);
   - Appellant's name was listed in RDV's staff directory in the 1998–99 Orlando Magic media guide;
   - RDV gave Magic Carpet employees discounts at its FanAttic retail stores and season tickets to Magic basketball games, invited Magic Carpet employees to RDV social functions, and gave Magic Carpet employees holiday gifts from Amway's catalogue and a crystal bowl with the inscription, "Orlando Magic, A Magical Decade, 1989–1999"; and
   - Magic Carpet employees were asked to volunteer to assist in the Orlando Magic's annual charity event, which Appellant as-

argued that the motion, despite being styled as a motion to dismiss for lack of subject matter jurisdiction, was actually an attack on the merits because it challenged the existence of an underlying element of his FMLA cause of action, namely his status as an "eligible employee." Citing our decision in *Garcia v. Copenhaver, Bell & Associates,* 104 F.3d 1256 (11th Cir. 1997), he asserted the motion should be reviewed under the standards appropriate to motions to dismiss brought under Rule 56 or Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under either of those standards, the district court would not be permitted to weigh facts but would instead be required to resolve disputed factual issues in Appellant's favor.

The district court concluded Appellees' challenge to Appellant's status as an eligible employee was properly raised under Rule 12(b)(1) because it challenged only subject matter jurisdiction and not the merits of Appellant's underlying FMLA claim. As such, the court determined it could properly act as "a fact finder," and "weigh the evidence submitted by the parties." Then, after weighing the evidence before it, the district court found RDV was not Appellant's employer and thus concluded Appellant was not an eligible employee under the FMLA.

### III.

■ Appellant maintains the district court erred in relying on Rule 12(b)(1). He asserts that eligible-employee status under the FMLA is an element of the underlying cause of action rather than a purely jurisdictional issue. He therefore argues the district court should have relied on Rule 12(b)(6) or Rule 56, which govern

motions to dismiss challenging the existence of an element of the underlying cause of action.

■ We begin by observing the district court could not have considered Appellees' motion under Rule 12(b)(6), because in rendering its decision the court relied on extrinsic evidence outside the pleadings. *See* Fed.R.Civ.P. 12(b); *see also Trustmark Ins. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1267 (11th Cir.2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion."). The more germane question is whether the district court should have reviewed the motion under Rule 56 instead of Rule 12(b)(1). As explained below, there are significantly different standards governing each type of motion.

### A.

■ The district court should only grant summary judgment under Rule 56 where the record evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In ruling on a Rule 56 motion, the district court may not weigh the evidence or find facts. Instead, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Jurisdictional challenges,[5] on the other hand, can be decided without refer-

---

serts was held in Magic Carpet's airplane hangar.

5. Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, "facial" and "factual" attacks. *Lawrence v. Dunbar,* 919

ence to the merits of the underlying claim and lie within the exclusive province of the trial court. Consequently, when a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and

> may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue.

*Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990) (quotation omitted).

We have cautioned, however, that the district court should only rely on Rule 12(b)(1) "[i]f the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of action.*" *Garcia,* 104 F.3d at 1261 (emphasis added). If a jurisdictional challenge does implicate the merits of the underlying claim then:

> [T]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.... Judicial economy is

best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion....

*Id.* (quoting *Williamson v. Tucker,* 645 F.2d 404, 415–16 (5th Cir.1981)[6]). We therefore must determine whether Appellees' motion to dismiss in this case implicated the merits of Appellant's FMLA action. If it did, the district court should have treated the motion as a motion for summary judgment under Rule 56 and refrained from deciding disputed factual issues.

**B.**

In *Garcia v. Copenhaver, Bell & Associates,* we considered whether a defendant's motion challenging its status as an "employer" under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 was purely jurisdictional or whether it also implicated an element of the underlying cause of action. 104 F.3d at 1258. Copenhaver, Bell & Associates had argued in the district court that it was not an "employer" within the meaning of

---

F.2d 1525, 1528–29 (11th Cir.1990). Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. *Id.* at 1529. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. *Id.* In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits. *Id.* Appellees' motion to dismiss was a factual

attack because it relied on extrinsic evidence and did not assert lack of subject matter jurisdiction solely on the basis of the pleadings.

6. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the ADEA because it employed an insufficient number of employees to meet the statutory definition of that term.[7] Its argument hinged on whether Garcia and other emergency room physicians were actually independent contractors rather than Copenhaver's employees. If the physicians were not employees then Copenhaver would have employed fewer than the minimum number of employees to be considered an employer under the statute. After hearing testimony on the issue and weighing the factual record before it, the district court concluded the physicians were independent contractors and dismissed the action for lack of subject matter jurisdiction. *Id.* at 1260.

On appeal, we held the district court had applied the wrong standard of review in ruling on the motion to dismiss. We recognized that jurisdiction becomes intertwined with the merits of a cause of action when "a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Id.* at 1262 (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters.*, 711 F.2d 138, 139–40 (9th Cir.1983) (quotation omitted)). Focusing on the language of the ADEA, we concluded in *Garcia* that the question of employer status intertwined jurisdiction and the merits, and consequently should have been resolved by the jury:

> From the plain language of the statute, it appears the elements of an ADEA claim under § 623(a)(1) can be summarized as follow, a plaintiff must prove: 1) an employer, 2) failed or refused to hire or to discharge, 3) any individual, 4) with respect to his compensation, terms, conditions, or privileges of employment, 5) because of such individual's age. Stated simply, it seems a plaintiff can only recover if he is able to prove an *"employer"* discriminated against him/her on the basis of age. In order to determine if a defendant qualifies as an "employer" and, consequently, whether ADEA will even apply, we must turn to ADEA's definitions' section.
>
> *In other words, it seems the section of ADEA that provides the substantive relief, § 623, is intertwined and dependent on the section of ADEA that defines the scope of the act, § 630.*

*Garcia,* 104 F.3d at 1262–63 (second emphasis added).

Given that employer status "is a substantive element of an ADEA claim and intertwined with the question of jurisdiction," *id.* at 1264, we held the district court erred in resolving questions of fact. Underlying our holding was "the belief that the jury, rather than the judge, should decide the disputed question" when the question went to the merits of the underlying claim. *Id.* at 1263.

Although *Garcia* arose under the ADEA, we noted the similarities—particularly the ADEA's limitation on actions against "employers"—to another federal anti-discrimination statute, Title VII of the Civil Rights Act of 1964. *See id.* at 1264

---

**7.** The ADEA, like the FMLA, sets limitations on whom may be sued under the statute by restricting causes of action to those brought against an "employer." "Employer" is defined under the ADEA as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." 29 U.S.C. § 630(b). The plaintiff's cause of action in *Garcia* was based on the ADEA provision making it unlawful for an *"employer* to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Garcia,* 104 F.3d at 1262 (citing 29 U.S.C. § 623(a)(1)) (emphasis added).

("Because there is no real difference (other than numerical) between the definitions in the two statutes, we turn to Title VII cases for guidance."). Title VII, like the ADEA, makes it unlawful for an "employer" to engage in unlawful discrimination and restricts the definition of "employer" based on the number of employees employed. *See* 42 U.S.C. § 2000e(b).[8] Presumably, then, a defendant's challenge to its status as an employer under Title VII would implicate the merits as well as jurisdiction.[9]

*Garcia* was our first decision holding that, in the case of an employment statute, questions of "employer" status implicate both jurisdiction and the underlying merits. The decision cited other cases from this Court, however, where we previously determined that a jurisdictional issue was intertwined with the underlying merits and therefore should have been resolved under Rule 56 instead of Rule 12(b)(1). *See Lawrence*, 919 F.2d at 1529 (whether federal employee was acting within scope of employment implicated both jurisdiction

and merits of Federal Tort Claims Act claim); *Williamson*, 645 F.2d at 416 (whether certain joint venture interests were "securities" under Securities Act of 1933 and Securities Exchange Act of 1934 went to both jurisdiction and merits).

We see no reason why these principles should not apply to a defendant's challenge to the plaintiff's status as an eligible employee under the FMLA. Like employer status under the ADEA, eligible-employee status under the FMLA is a threshold jurisdictional question, *see* 29 U.S.C. § 2611 (limiting the scope of the Act to statutorily-defined eligible employees), that also appears to be a prima facie element for recovery in a civil action, *see* 29 U.S.C. § 2617(a)(1) ("Any employer who violates section 2615 of this title shall be liable to any *eligible employee* affected ....") (emphasis added); *see also Rockwell v. Mack Trucks, Inc.*, 8 F.Supp.2d 499, 502 (D.Md.1998) (noting eligible-employee status is a prima facie element of an FMLA discriminatory discharge claim).[10]

**8.** Under Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." 42 U.S.C. § 2000e(b).

**9.** As we discuss *infra*, *Scarfo v. Ginsberg*, 175 F.3d 957 (11th Cir.1999) reached the opposite conclusion. For reasons soon to be explained, we do not believe *Scarfo* states the law applicable to this case.

**10.** We believe it to be of little moment that the statutory provision at issue in this case refers to an "eligible employee" rather than an "employer" as was the case in *Garcia*. In addition to limiting causes of action to those brought by "eligible employees," the FMLA also limits causes of action to suits against an "employer," defined as a person who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar

year. 29 U.S.C. § 2611. The eligible employee requirement, in effect, simply adds to the limitation on whom may be sued by imposing a "worksite" requirement, i.e., the requirement that the 50 employees be employed within 75 miles of the employee's worksite. To wit, Amway, which employs more than 50 employees nationwide—but not within 75 miles of Appellant's worksite—qualified as an "employer" under the FMLA, but Appellant would not have been an "eligible employee" were Amway his only employer due to the added worksite requirement. This in all likelihood explains why Appellees chose to challenge Appellant's eligible-employee status rather than their own employer status. But in actuality, Appellees, like the defendant in *Garcia*, were claiming they fell outside the class of persons who could be sued under the Act. In any event, regardless of whether the "eligible employee" limitation actually bears on the plaintiff's status, the defendant's status, or both, it seems clear to us that it is intertwined with the underlying merits of an FMLA claim.

In short, we view this case as materially indistinguishable from *Garcia.* The question of "eligible employee" status implicates both jurisdiction and the merits, and is properly reserved for the finder of fact.[11]

### C.

The difficulty confronting us in this case is *Scarfo v. Ginsberg,* 175 F.3d 957 (11th Cir.1999), an opinion we issued two years after *Garcia. Scarfo* held that the defendants' challenge to their status as an "employer" under Title VII was jurisdictional and could be reviewed under Rule 12(b)(1).

In *Scarfo,* several corporate defendants sought dismissal of a plaintiff's Title VII claim on the grounds that they did not employ the minimum number of employees to qualify as an "employer" under the statute. The plaintiff had asserted the defendants constituted a "single employer" that collectively employed enough employees to be subject to suit. After weighing the evidence, the district court concluded the defendants were not a single employer and dismissed the action for lack of subject matter jurisdiction.[12] Not surprisingly, the plaintiff relied on *Garcia* in arguing on appeal that the employer-status issue went to the merits of her underlying claim and

any factual disputes over that issue should have been resolved by the jury.

A majority of the three-judge panel on appeal held *Garcia* distinguishable on its facts. The Court emphasized that in *Garcia* the district court could only have resolved the employer-status issue by first determining whether Garcia and similarly-situated individuals were *employees* under the ADEA. In contrast, the defendants' challenge in *Scarfo* simply presented an issue of whether they were a single employer for counting purposes, which could be decided without reference to any concomitant questions of "employee" status. Without fully explaining the importance of this distinction, the majority concluded:

> In contrast [to *Garcia* ], the appellees' status as "employers" in this case does not implicate an element of the Title VII cause of action.... Whether the appellees constitute an "employer" within the definition of Title VII is a threshold jurisdictional issue.

*Scarfo,* 175 F.3d at 961.

It thus appears to us that *Scarfo* understood *Garcia* 's use of the word "intertwined" to mean that the employer- and employee-status questions must be intertwined with each other in order to necessitate Rule 56 review. *See id.* at 961 n. 1

---

**11.** We have surveyed the opinions of other circuits and note a split in authority regarding whether challenges to employer status under federal employment statutes are strictly jurisdictional or intertwined with the merits. *Compare Da Silva v. Kinsho Int'l Corp.,* 229 F.3d 358, 366 (2d Cir.2000) (holding Title VII's fifteen-employee requirement is not jurisdictional), *Papa v. Katy Indus., Inc.,* 166 F.3d 937, 943 (7th Cir.1999) (few-employees exemption to Title VII, ADA, and ADEA not jurisdictional), *and EEOC v. St. Francis Xavier Parochial School,* 117 F.3d 621, 624 (D.C.Cir. 1997) (Title VII's fifteen-employee requirement not jurisdictional), *with Hukill v. Auto Care, Inc.,* 192 F.3d 437, 441 (4th Cir.1999) (holding employer status under FMLA goes to jurisdiction, not merits), *and Greenlees v. Ei-*

*denmuller Enters., Inc.,* 32 F.3d 197, 198 (5th Cir.1994) (treating employer status under Title VII as jurisdictional). In our view, those courts ruling the issue to be only jurisdictional have been fairly criticized as providing "little or no discussion" to explain their reasoning. *Da Silva,* 229 F.3d at 364. Even if we were inclined to treat the issue as solely jurisdictional, we are bound by our precedent in *Garcia* that holds otherwise.

**12.** Although the district court in *Scarfo* purported to apply a Rule 56 summary judgment standard in deciding the jurisdictional issue, it appears the court actually weighed the evidence as if it were proceeding under Rule 12(b)(1).

("In *Garcia,* the 'employer' and 'employee' issues were intertwined because the ADEA's definitions of 'employer' and 'employee' overlapped."). As the dissenting judge in *Scarfo* pointed out, however, the word "intertwined" in *Garcia* refers to jurisdiction being intertwined with *an element of the underlying cause of action.* *Id.* at 963 (Barkett, J., dissenting). In other words, *Garcia* involved two different kinds of "intertwining." The first was that the question of employer status under the ADEA happened to be "intertwined" with the plaintiff's status as an employee; this overlap was inconsequential to *Garcia*'s holding. The second type of intertwining, which was critical to the Court's holding, was that the attack on subject matter jurisdiction—based on the defendant's assertion that it was not an "employer"—was "intertwined" with an element of the underlying cause of action. It was this second type of "intertwining" that was the driving force behind *Garcia*'s holding:

> The fact that in *Garcia,* the question of the plaintiff's "employee" status was also "intertwined" with that of the defendant's "employer" status was wholly irrelevant to the holding in that case and is irrelevant to the distinct inquiry we face here, which is whether Ginsberg's challenge to the court's jurisdiction is itself "intertwined," not with an additional factual question, but with an element of the cause of action. And as the *Garcia* analysis makes clear, *both* the defendant's employer status and the plaintiff's employee status for purposes of Title VII are substantive elements of the plaintiff's cause of action "intertwined" with the question of jurisdiction.

*Id.* (Barkett, J., dissenting).

Having reviewed *Garcia* and *Scarfo,* we are compelled to the same conclusion as Judge Barkett: *Garcia* was "squarely applicable" to the facts of *Scarfo. Id.* (Barkett, J., dissenting). By concluding otherwise, *Scarfo* effectively overruled *Garcia* *sub silentio.* *See Scelta v. Delicatessen Support Servs., Inc.,* 1999 WL 1053121, at *5 (M.D.Fla.1999) ("After analyzing the decision in *Scarfo,* this Court finds that there appears to be a direct conflict between *Scarfo* and the Eleventh Circuit's previous decision in *Garcia.*"). What remains to be determined is how to resolve this apparent intra-circuit split.

### D.

A prior panel decision of this Court is binding on subsequent panels and can be overturned only by the Court sitting en banc. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981). When faced with an intra-circuit split we must apply the "earliest case" rule, meaning "when circuit authority is in conflict, a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel." *Walker v. Mortham,* 158 F.3d 1177, 1188 (11th Cir.1998). We have deemed this approach to be more respectful of the prior precedent rule than the alternative, which would be to "tell judges that once they find a division of authority they are free to throw precedent to the wind." *Id.* at 1189.

*Garcia* preceded *Scarfo* and, in our view, correctly states the law in our Circuit. As a panel of this Court ourselves, it is not for us to decide whether *Garcia should* be the law in this Circuit. That question can only be answered by the Supreme Court or this Court sitting en banc. Rather, we conclude *Garcia is* the law in this Circuit and must be respected.

### IV.

Appellees' motion to dismiss implicated both jurisdiction and the underlying merits of Appellant's FMLA claim. Therefore, under our decision in *Garcia,* the district court was required to "find that jurisdiction exists and deal with the objection as a

direct attack on the merits of the plaintiff's case." *Garcia*, 104 F.3d at 1261 (quotation omitted). The district court's decision to treat Appellees' attack as purely jurisdictional and resolve disputed issues of fact, though understandable in light of *Scarfo*, erroneously invaded the province of the jury. The proper course in this case was to resolve the attack under Rule 56 and review for sufficiency of the evidence, and we remand so that the district court may do so.

We wish to emphasize that our decision today does not mean eligible-employee status under the FMLA is always a jury question. To the contrary, the district court may properly dismiss an FMLA action under Rule 12(b)(6) or Rule 56 if the plaintiff fails to establish this or any other element of his prima facie case under the standards appropriate to those Rules.[13]

REVERSED and REMANDED.

---

**13.** We intimate no view with respect to whether, based on the record before us, Appellant has adduced sufficient evidence of his eligible employee status to overcome summary judgment on remand. Furthermore, any discovery issues that may result from our decision today are entrusted to the sound discretion of the district court. We observe, however, that Appellant has argued he should be entitled to conduct further discovery in order to respond to what was essentially a motion for summary judgment.