[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 6, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-14830

_____

D. C. Docket No. 06-00395-CV-4-RH-WCH

FLORIDA FAMILY POLICY COUNCIL,

Plaintiff-Appellant,

versus

THOMAS B. FREEMAN, in his
official capacity as a member of
the Florida Judicial
Qualifications Commission,
PEGGY GEHN, in her official
capacity as a member of the Florida
Judicial Qualifications Commission,
PAUL L. BACKMAN, in his official capacity
as a member of the Florida Commission
on Judicial Qualifications,
DAVID H. YOUNG, in his official capacity
as a member of the Florida Judicial
Qualifications Commission,
MORRIS SILBERMAN, in his official
capacity as a member of the Florida
Judicial Qualifications Commission, et al.,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Northern District of Florida

———————————————

(March 6, 2009)

Before CARNES and MARCUS, Circuit Judges, and DUBOSE,[*] District Judge.

CARNES, Circuit Judge:

Florida Family Policy Council, Inc. is a nonprofit organization that distributes questionnaires to judicial candidates in order to gather and publish their views on legal and political issues. Florida Family's attempts to gather judicial candidates' views, however, have been hampered in part by Canon 3E(1) and 3E(1)(f) of the Florida Code of Judicial Conduct. Those provisions address situations in which a judge must disqualify himself because his "impartiality might reasonably be questioned," including when he has "made a public statement that commits, or appears to commit, the judge with respect to" a particular party, issue, or controversy. Canon 3E(1), 3E(1)(f). The general disqualification provision in Canon 3E(1), along with the "commits clause" at Canon 3E(1)(f), led some Florida judicial candidates not to respond to the questionnaires because they feared that

———————————————

[*] Honorable Kristi K. DuBose, United States District Judge for the Southern District of Alabama, sitting by designation.

2

doing so would require their disqualification from future cases. Florida Family

filed a complaint asserting that Canon 3E(1) and subpart (f) unconstitutionally

infringed its right to receive speech under the First and Fourteenth Amendments.

The district court dismissed the complaint under Federal Rule of Civil Procedure

12(b)(6) because it found no merit in Florida Family's constitutional claims. This

is Florida Family's appeal.

**I.**

The Florida Supreme Court has adopted a Code of Judicial Conduct to

govern the actions of state court judges and candidates for judicial office. Canon

3E(1) states:

> (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>      . . .
>      (f) the judge, while a judge or a candidate for judicial office, has made a public statement that commits, or appears to commit, the judge with respect to:
>              (i) parties or classes of parties in the proceeding;
>              (ii) an issue in the proceeding; or
>              (iii) the controversy in the proceeding.

The Code defines "impartiality" as the "absence of bias or prejudice in favor of, or

against, particular parties or classes of parties, as well as maintaining an open

mind in considering issues that may come before the judge." Fla. Code of Jud.

3

Conduct, Definitions. Canon 3E(1)(f), which the Florida Supreme Court adopted in January 2006, covers one area in which a judge's "impartiality might reasonably be questioned." See In re Amendment to Code of Judicial Conduct, 918 So. 2d 949 (Fla. 2006). In addition to the Florida Supreme Court, the Judicial Ethics Advisory Committee (Ethics Committee) and the Judicial Qualifications Commission (JQC) have roles in administering the Code.

The Florida Supreme Court established the Ethics Committee "to render written advisory opinions to inquiring judges concerning the propriety of contemplated judicial and non-judicial conduct." Petition of Comm. on Standards of Conduct for Judges, 327 So. 2d 5, 5 (Fla. 1976). The Ethics Committee's advisory opinions do not bind the JQC. Id. However, at its discretion the JQC may consider reliance on an advisory opinion as evidence of a judge's good faith effort to comply with the Code. Id. at 5–6.

The Florida Constitution vests the JQC with the authority to investigate and recommend to the state supreme court the discipline of judges. Fla. Const. art. 5, § 12(a)(1). Acting either on its own initiative or in response to a complaint, an investigatory panel of the JQC determines whether there is probable cause to believe that a judge has violated the Canons. If there is probable cause, a JQC panel conducts a trial and submits its findings and recommendations to the Florida

4

Supreme Court. That Court then reviews the JQC's evidence, and while it "gives the findings and recommendations of the JQC great weight, the ultimate power and responsibility in making a determination rests with" the Florida Supreme Court. In re Andrews, 875 So. 2d 441, 442 (Fla. 2004) (citations and quotation marks omitted).

In an effort to collect judicial candidates' views, Florida Family mailed a questionnaire to all judicial office primary candidates in Florida in July 2006. An explanatory letter attached to the questionnaire stated that "it is understood that your responses to the questions . . . do not constitute any pledge, promise, or commitment or intended to create the appearance of a pledge, promise, or commitment to reach any particular result in a case." The letter also urged candidates to seek an advisory opinion from the Ethics Committee if they remained uncertain whether they could answer the questionnaire without having to disqualify themselves from future cases.

The questionnaire included thirteen questions on a variety of topics. The first five solicited biographical information. The sixth and seventh questions asked the candidate to list which current justices on the United States Supreme Court and the Florida Supreme Court most reflected the candidate's own judicial philosophy. Question eight asked the candidate whether he believed that the

5

Florida Constitution recognizes a right to same-sex marriage. The final five questions asked whether the candidate agreed with judicial decisions regarding parental consent for abortions, assisted suicide, homosexual adoption, voucher programs, and the elements of burglary. For questions eight through thirteen, candidates could select from five responses: "Agree," "Disagree," "Undecided," "Decline to respond," or "Refuse to respond."

On the questionnaire, next to each "Decline to respond" blank, was an asterisk accompanied by a footnote that stated:

> This response indicates that I would answer this question but believe that I am prohibited from doing so by Florida Canons of Judicial Conduct 3B(10) and 7A(3)(a) and (d)(1) . . . . In addition, I would answer this question, but believe that if I did so, then I will be required to recuse myself as a judge in any proceeding concerning this answer on account of Florida Canons 3E(1) and 3E(1)(f) . . . .

Before responding to the questionnaire several judicial candidates followed the advice in Florida Family's accompanying letter and sought guidance from the Ethics Committee. On August 7, 2006 the Ethics Committee issued Advisory Opinion 06-18. That opinion advised judicial candidates they could answer the questionnaire so long as:

> (1) the candidate clearly indicates that the answers do not constitute a promise that the candidate will rule a certain way in a case; (2) the candidate clearly acknowledges the obligation to follow binding legal precedent anywhere it exists; (3) the candidate does not appear to

6

endorse any other individual who is likely to stand for election to or retention in any public office or any platform of a political party; and (4) any commentary on past judicial decisions is analytical, informed, respectful, and dignified.

However, the advisory opinion "caution[ed] that the line between 'announcing' and 'promising' can be a thin one." The opinion reminded judicial candidates that with respect to disqualification:

> [T]he 'eye of the beholder' is the primary focus. Despite the fact a judicial candidate's pronouncements may be constitutionally protected speech and in compliance with ethical canons, the dispositive question is still whether the individual 'beholder's' fear of partiality is reasonable, reasonableness being determined by a neutral and objective standard.

Finally the opinion warned that a judicial "candidate <u>must not</u> furnish answers that appear to bind the candidate if such issues arise once the candidate has assumed judicial office."

In the days surrounding the issuance of Advisory Opinion 06-18, Florida Family received sixty-three responses to its questionnaire. Forty-seven of them contained mostly or entirely "Decline to respond" answers to questions six through thirteen. Florida Family itself responded to Advisory Opinion 06-18 and to the answers it had received to the first questionnaire by sending out a new one just three days after the Advisory Opinion was issued.

The revised questionnaire, like the first one, was sent to all judicial candidates. It was accompanied by an explanatory letter stating that the Ethics Committee had recently released a "favorable opinion" regarding the questionnaire. Florida Family informed the judicial candidates that it planned to throw out all of the responses to its initial inquiry and substitute their responses to the new one. The new questionnaire began with a boldface disclaimer that stated:

> By answering and signing this Questionnaire, you warrant that you understand that, as a judge, your decisions will follow binding precedents and that your answers do not constitute a promise to rule in a certain way in a case. You are free to offer further explanations of your answers on this or in a separate document, and your comments will be made available. Any comments should be analytical, informed, respectful, and dignified. See Florida Supreme Court Judicial Ethics Advisory Committee Opinion, No. 06-18 (Aug. 7, 2006), provided with this Questionnaire.

Although the new questionnaire contained all of the same questions as the earlier one, the footnote accompanying the "Decline to respond" option was revised to state:

> This response indicates that I would answer this question, but believe that if I did so, then I would be required to recuse myself as a judge in any proceeding concerning this answer because of Florida Canons 3E(1) and 3E(1)(f) . . . . In this regard, my opinion is informed by Florida Supreme Court Judicial Ethics Advisory Committee Opinion No. 06-18 (Aug. 7, 2006) . . . .

8

Fifty-three judicial candidates returned Florida Family's revised questionnaire. Twenty-five of that number, however, chose the "Decline to respond" option for some or all of the questions.

Florida Family's website ultimately displayed all of the biographical information it received in response to the first five questions of both questionnaires. With regard to the last eight questions, which were related to judicial philosophy and legal issues, Florida Family "decided not to report the response[s] in order to avoid potentially exposing the candidate[s] to required disqualification or recusal."

## II.

In August 2006 Florida Family filed a complaint in the United States District Court for the Northern District of Florida against the members of the JQC and the Florida Bar Legal Division's five Chief Disciplinary Counsel, who enforce the canons generally against lawyers who are judicial candidates.[1] Florida Family claimed that Canon 3E(1) and subpart (f) are unconstitutional as applied to its questionnaires because they chill judicial candidates' speech and thus deny Florida

---

[1] Rule 4-8.2(b) of the Rules Regulating the Florida Bar states: "A lawyer who is a candidate for judicial office shall comply with the applicable provisions of Florida's Code of Judicial Conduct." We question whether the bar disciplinary counsel should have been made defendants in this lawsuit since, as we will explain, the provision of the Canons in question can be violated only by a sitting judge. In view of our disposition of this appeal we need not decide whether the bar disciplinary counsel were proper parties.

9

Family "its right to receive and publish information." The complaint also claimed that Canon 3E(1)(f) is unconstitutionally vague and overbroad because it "does not adequately define its commits clause" and "sweeps constitutionally protected announcements of personal views on disputed legal and political issues within the sphere of prohibited speech."

However, Florida Family's complaint did not challenge the constitutionality of, or even mention, Fla. Stat. § 38.10. Section 38.10, along with its procedural Rule of Judicial Administration 2.330, gives parties the right to move for the disqualification of a judge if the party has a reasonable fear that he cannot receive a fair trial in front of that judge. Fla. R. Jud. Admin. 2.330(b) ("Any party, including the state, may move to disqualify the trial judge assigned to the case on grounds provided by rule, by statute, or by the Code of Judicial Conduct."). Florida Family's complaint challenged only Canon 3E(1) and subpart (f).

Florida Family asked the district court to preliminarily enjoin the JQC from enforcing Canon 3E(1) and any related canons until the court could reach a final decision on the merits. In support of its motion for a preliminary injunction, Florida Family submitted an affidavit from Judge John Stargel of Florida's Tenth Judicial Circuit, who had chosen the "Decline to respond" option on Florida Family's second questionnaire. Judge Stargel's affidavit stated:

10

I would have answered the questionnaire. However, I believe that Canon 3E(1)(f) would require my recusal as a judge from cases involving the issues addressed on the questionnaire because my answers might "appear to commit." Likewise, I believe that Canon 3E(1) would require my recusal because my answers might cause my impartiality to be reasonably questioned. Advisory Opinion 06-18 supports my understanding of these canons . . . . Because of these provisions and their interpretation, I did not answer the questionnaire, but checked "Decline to respond" for all my answers.

At the evidentiary hearing on the motion for a preliminary injunction the JQC's key witness was its chairman, Judge James Wolf of Florida's First District Court of Appeal. Judge Wolf testified that he was "not familiar with any case" where the JQC had ever attempted to discipline a judge based on "statements that a judge has made on an issue." However, Judge Wolf stated that if a judicial candidate answered Florida Family's questions about the right to same-sex marriage and the prohibition of homosexual adoption, that judge "arguably" must disqualify himself from future cases involving those issues.

After the hearing, the district court concluded that Florida Family had standing to raise the First Amendment issues and that they were ripe. The district court also concluded, however, that Florida Family had not established a likelihood of success on the merits and for that reason denied the motion for a preliminary injunction.

11

Meanwhile, the JQC had filed a motion to dismiss Florida Family's complaint under Rule 12(b)(6) and (7). The JQC contended, among other things, that Florida Family lacked standing, that the issues were not ripe, and that the complaint failed to state a claim upon which relief could be granted because Canon 3E(1) and subpart (f) do not violate the First Amendment. The district court did not change its view that Florida Family had standing and its claims were ripe, but it did agree with the JQC on the merits of the First Amendment issues and for that reason granted the motion to dismiss. The court reasoned that Canon 3E(1) and subpart (f) survive strict scrutiny analysis because Florida has "a compelling interest in providing suitably impartial, open minded judges who will rule based on the evidence and governing law." Accordingly, the Code's disqualification provisions were constitutional.

Florida Family contends that the district court properly determined that standing exists and that its claims are ripe for review but that the court erred in holding that Canon 3E(1) and subpart (f) do not violate the First Amendment.

**III.**

We must first address "the threshold jurisdictional question" of whether Florida Family has standing to bring this lawsuit. Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006). "Both standing and ripeness originate from the

12

Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies." Id. at 1204–05; see also Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974–75 (11th Cir. 2005).

Florida Family's complaint was dismissed for failing to state a claim, which normally confines our review to the complaint. Land v. Dollar, 330 U.S. 731, 735 n.4, 67 S. Ct. 1009, 1011 n.4 (1947). However, in determining subject matter jurisdiction we are permitted to look at all of the evidence presented, including affidavits and testimony relating to a motion for a preliminary injunction. Id. ("In passing on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true and affidavits and other evidence produced on application for a preliminary injunction may not be considered. But when a question of the . . . Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist." (citations omitted)).

Standing under Article III has three elements: (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged

13

action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992) (alterations, citations, and quotation marks omitted); see also Pittman v. Cole, 267 F.3d 1269, 1282 (11th Cir. 2001) (setting forth the same three elements). The burden is on Florida Family, as the party seeking to invoke jurisdiction, to produce facts sufficient to support its standing. Pittman, 267 F.3d at 1282. "We review de novo whether a plaintiff has standing to bring suit in federal court." Id.

There are serious standing issues in this case, not all of which we have to decide. As we will explain, even if we assume that Florida Family can clear the actual injury hurdle, it stumbles on the redressability requirement. The result is no standing.

**A.**

Florida Family must first show that the application of Canon 3E(1) and subpart (f) have caused it to suffer an injury in fact—a concrete, particularized, and actual or imminent invasion of a constitutionally protected interest. See Lujan, 504 U.S. at 560, 112 S. Ct. at 2136. We recognize that in First Amendment challenges, the actual injury requirement is "most loosely applied" in order to

14

provide broad protection for speech.  Pittman, 267 F.3d at 1283; see also White's Place, Inc. v. Glover, 222 F.3d 1327, 1329 (11th Cir. 2000) ("We will not force a plaintiff to choose between intentionally violating a law to gain access to judicial review and foregoing what he or she believes to be constitutionally protected activity.").  But it still exists.

Florida Family's constitutionally protected interest is in receiving speech. Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 756, 96 S. Ct. 1817, 1823 (1976) ("Freedom of speech presupposes a willing speaker.  But where a speaker exists, as is the case here, the protection afforded is to the communication, to its source and to its recipients both."); Pittman, 267 F.3d at 1283–85.  For a recipient of speech like Florida Family to demonstrate injury in fact for standing purposes, it must show:  (1) an otherwise willing speaker whose speech was chilled by the challenged regulation, and (2) that the chill was objectively reasonable as shown by a credible threat of penalty.  See Pittman, 267 F.3d at 1283–84.[2]

---

[2] In Pittman, the asserted injury in fact was different because the Christian Coalition, the information-gathering organization, was not the only plaintiff.   It was joined by judicial candidates who had their own direct standing based on the chill of their freedom of speech.  267 F.3d at 1283.  We did conclude, however, that the "objectively reasonable chill on the First Amendment rights of the Alabama judicial candidates . . . in turn caused an injury in fact to the Christian Coalition plaintiff."  Id. at 1284.

Florida Family asserts that Judge Stargel's affidavit established that he was a "willing speaker" who would have spoken but for his belief that the Canons would require his disqualification in future cases.[3] See Kan. Jud. Rev. v. Stout, 519 F.3d 1107, 1115 & n.8 (10th Cir. 2008) (holding that a judicial candidate who stated that he would have answered the questionnaire "but for the limitations imposed by the Canons" was a willing speaker).

Florida Family further argues that Judge Stargel's self-censorship— the chilled speech— was an objectively reasonable response to a credible threat of a penalty. See ACLU v. Fla. Bar, 999 F.2d 1486, 1492 (11th Cir. 1993) (noting that "the likelihood of disciplinary action by the Bar and the JQC is an important factor" in determining whether self-censorship is objectively reasonable). The argument is that it was reasonable for Judge Stargel to hesitate to respond to the questionnaire because the Ethics Committee's advisory opinion was equivocal and did not significantly lessen the possibility that answering Florida Family's questionnaire could lead to a violation of the Canons. The Chairman of the prosecuting body, the JQC, testified that he believed answering certain questions

---

[3] Florida Family also contends that the other judicial candidates who marked "Decline to respond" and thereby adopted its footnote about Canon 3(E)(1) are also "willing speakers." But see Pa. Fam. Inst., Inc. v. Black, 489 F.3d 156, 167–68 (3d Cir. 2007); Ind. Right to Life, Inc. v. Shepard, 507 F.3d 545, 550 (7th Cir. 2007).

16

could lead to disciplinary action by the JQC *if* the judge refused to disqualify himself from future cases involving the issues contained in the questionnaire. See id. at 1489 (noting that the JQC's refusal to say whether it would prosecute a judicial candidate for certain speech, in light of conflicting other authority, weighed in favor of the candidate's self-censorship being objectively reasonable). Moreover, the Florida Supreme Court's only ruling on language similar to that in Canon 3E(1) upheld it, albeit in an as-applied challenge in a case distinguishable on its facts. See In re Kinsey, 842 So. 2d 77, 85–88 (Fla. 2003) (holding that a judicial candidate who had promised favorable treatment for police and victims over criminal defendants in her courtroom had violated the Canons and was not protected from disciplinary action by the First Amendment).

The defendants respond, however, that Judge Stargel's fear, even if reasonable, is not a fear of a *penalty*, but merely a fear of disqualification. After all, unlike the ACLU and Pittman cases, which involved simple bans on speech, in this case the judges are free to answer the questionnaire. They would violate the Canons only by refusing to disqualify themselves in future cases where, because of the answers they gave to the questionnaire, their "impartiality might reasonably be questioned." In theory, a rational judge (which is redundant, we hope) will always choose to disqualify himself rather than risking discipline for violating a

17

canon of judicial ethics. The defendants argue that this means judges will not face an actual *penalty*, and so there is not one they can reasonably fear.

The best response to this argument is that the specter of disqualification *itself* is a penalty for standing purposes under the First Amendment. At first glance, forced disqualification does not appear to be a penalty. After all disqualification from deciding a case does not affect a judge's tenure, salary, health benefits, or parking space.

Yet there is a non-frivolous argument that, in light of the especially "loose" nature of the injury in fact prong in First Amendment cases, Pittman, 267 F.3d at 1283, forcing a judge to disqualify himself from high-profile, interesting cases is a penalty in itself. See Perry v. Sindermann, 408 U.S. 593, 597, 92 S. Ct. 2694, 2697 (1972) (holding that the loss of a non-tenured government job was a penalty— an unacceptable burden on speech that violated the First Amendment); Justice Felix Frankfurter, Some Observations on the Nature of the Judicial Process of the Supreme Court, 98 Proc. of the Am. Phil. Soc. 233, 238 (1954) ("[A] judge worth his salt is in the grip of his function."); Letter from Justice Oliver Wendell Holmes, Jr. to Lady Castletown (Feb. 11, 1897) in Sheldon M. Novick, Honorable Justice: The Life of Oliver Wendell Holmes 215 (Little, Brown & Company 1989)

18

("I should like to decide every case – and write every judgment of the court, but I'm afraid the boys wouldn't see it.").

It is certainly possible that a judge in the grip of his function would want to participate in the decision of cases involving abortion rights, assisted suicide, homosexual adoption, and voucher programs. Such a judge would be reluctant to abandon his chance to participate in such cases by answering a questionnaire. Judge Stargel evidently was.

Florida Family must show that judicial disqualification is a penalty for standing purposes under the First Amendment. If it cannot, and the only penalty is disciplinary sanctions for a refusal to disqualify, then a judge's fear of penalty is not objectively reasonable. The fear is not objectively reasonable because it depends on speculation and conjecture that instead of disqualifying himself where the canons require him to do so, the judge will refuse and face discipline. See Lujan, 504 U.S. at 560–61, 112 S. Ct. at 2136. So if disqualification is not itself a penalty, Florida Family cannot show an actual injury.

We need not decide this question of actual injury, however, because Florida Family loses the standing war on the redressability battle.

**B.**

Florida Family must show "a causal connection" between the application of the challenged Canons and the claimed chill on the judicial candidates' freedom of speech, Elend, 471 F.3d at 1206, and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560–61, 112 S. Ct. at 2136 (citation and quotation marks omitted); Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 771, 120 S. Ct. 1858, 1861–62 (2000) (requiring "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact"). Florida Family is seeking a decision that Canon 3E(1) and subpart (f) are either facially unconstitutional or unconstitutional as applied to judicial candidates who answer its questionnaire.

The defendants argue that apart from the canons, Fla. Stat. § 38.10 and Rule of Judicial Administration 2.330 in combination will lead to the same result that the threat of an action by the JQC will, which is disqualification. Section 38.10 gives parties the right to move to disqualify a judge when the party fears that "he or she will not receive a fair trial . . . on account of the prejudice of the judge of that court against the applicant or in favor of the adverse party." Fla. Stat. § 38.10. Rule of Judicial Administration 2.330 specifies that a motion to disqualify must

show that "the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge." Fla. R. Jud. Admin. 2.330. If the judge denies a motion to disqualify brought under § 38.10 the movant has the right to appeal. Lynch v. State, ___ So. 2d ___, Nos. SC06-2233, SC07-1246, 2008 WL 4809783, at *26 (Fla. Nov. 6, 2008). As the Florida Supreme Court recently held: "A motion to disqualify is governed substantively by section 38.10, Florida Statutes, and procedurally by Florida Rule of Judicial Administration 2.330." Id. The motion to disqualify in Lynch cited § 38.10 and Rule 2.330, as well as Canon 3E(1). Id. at *4.

Judge Wolf, the chairman of the JQC, testified in this case that "the grounds for recusal under § 38.10 and [Canon] 3E would appear to be relative—would appear to be the same, same standards." He gave his opinion that a judge who improperly refused to disqualify himself after receiving a § 38.10 motion to do so "would be reversed in the appellate courts," although failure to disqualify might "not constitute a violation of the Code, which we would pursue." Judge Wolf testified, however, that he could not "conceive of any situation where something would be a violation of the canon [3E(1)] and would not also be a violation of 38.10."

The Florida Supreme Court has also held, in effect, that § 38.10 and the Canons require the same thing. See Livingston v. State, 441 So. 2d 1083, 1086 (Fla. 1983). In Livingston the court cited the Canon's requirement that a judge disqualify himself when his "impartiality might reasonably be questioned" and concluded that it was "totally consistent" with Florida case law applying § 38.10. Id. Both require disqualification when a party can show "a well grounded fear that he will not receive a fair trial at the hands of the judge." Id. (quoting State ex rel. Brown v. Dewell, 179 So. 695, 697–98 (Fla. 1938)); see also Berry v. Berry, 765 So. 2d 855, 857 (Fla. 5th DCA 2000) (quoting Canon 3E(1) when describing the standard for granting a motion under § 38.10). We are, of course, bound to follow Florida appellate court decisions interpreting that state's law. Blue Cross & Blue Shield of Ala., Inc. v. Nielsen, 116 F.3d 1406, 1413 (11th Cir.1997) ("The final arbiter of state law is the state supreme court, which is another way of saying that Alabama law is what the Alabama Supreme Court says it is."); Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir. 1983) ("A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.").

So there are two ways that a judge who answers Florida Family's questionnaire can be disqualified from deciding a case as a result. Those two ways are separate routes to the same destination, and they share the same standard. Canon 3E(1), backed by the threat of a disciplinary proceeding, requires a judge to disqualify himself if his "impartiality might reasonably be questioned." Fla. Stat. § 38.10, supplemented by Rule 2.330, allows a party to have a judge disqualified for the same reason. Nothing a federal court could do or say about the challenged canon would alter what the state courts could do under the statute. There are two reasons.

First, in this lawsuit Florida Family has only challenged the canon, not the statute. Its thirteen-page complaint never mentioned § 38.10 or Rule 2.330. The district court did not mention § 38.10 either, probably because Florida Family did not. Even on appeal Florida Family did not mention § 38.10 or Rule 2.330 until it was forced by the defendants' argument to address those provisions in its reply brief.

Second, it is doubtful that Florida Family *could have* obtained any relief against the threat of disqualification that § 38.10 poses, even if it had sought to do so. Canon 3E is enforced by the JQC, which has the authority to bring disciplinary charges against a judge. That is why Florida Family's complaint

23

seeks declaratory and injunctive relief against the members of the JQC. <u>Ex Parte</u>

<u>Young</u>, 209 U.S. 123, 28 S. Ct. 441 (1908); <u>Scott v. Taylor</u>, 405 F.3d 1251, 1255

(11th Cir. 2005) (noting that under <u>Young</u>, state officials may be enjoined in their

official capacity from enforcing unconstitutional laws without running afoul of

state sovereign immunity). An injunction against the members of the JQC would

protect state judges from discipline under Canon 3E(1) and subpart (f).

Section 38.10, by contrast, is not enforced by specific state officials who

can be named as defendants in a lawsuit and enjoined from acting if the suit is

successful.  Instead, it would be invoked by parties in future state court litigation

and enforced by the state courts when the impartiality issue is raised.  Because

there is no way to determine the identity of the future parties who will raise the

issue, there is no one who can be enjoined.  Nor can the district court enjoin the

state courts that will decide the issue under § 38.10 when it is brought up.  <u>See</u>

Anti-Injunction Act, 28 U.S.C. § 2283; <u>Atl. Coast Line R.R. Co. v. Bhd. of</u>

<u>Locomotive Eng'rs</u>, 398 U.S. 281, 294, 90 S. Ct. 1739, 1747 (1970) ("[A] federal

court does not have inherent power to ignore the limitation of § 2283 and to enjoin

state court proceedings merely because those proceedings interfere with a

protected federal right. . . .").  Thus, there would be no defendant for Florida

Family to sue in order to obtain a judgment that § 38.10 was unconstitutional, and there would be no way for a district court to effectuate such a judgment.

Anything that the district court or this Court says about the constitutionality of the common standard underlying the canon and statute would not bind Florida courts applying the statute. Even if we were to hold that the standard common to both is unconstitutional, the Florida courts would be free to reach the opposite conclusion and decide motions to disqualify in accord with their own views. See Arizonans for Official Eng. v. Arizona, 520 U.S. 43, 58 n.11, 117 S. Ct. 1055, 1064 n.11 (1997) (the "Supremacy Clause does not require state courts to follow rulings by federal courts of appeals on questions of federal law." (citing Lockhart v. Fretwell, 506 U.S. 364, 375–76, 113 S. Ct. 838, 845–46 (1993) (Thomas, J., concurring)); Glassroth v. Moore, 335 F.3d 1282, 1302 n.6 (11th Cir. 2003)).

This means that granting Florida Family the relief it seeks against the enforcement of Canon 3E(1) and subpart (f) will do nothing to lift the chill that prevents Judge Stargel or any other judge from responding to the questionnaire because it does nothing to remove the asserted penalty. The chill wind from that asserted penalty will still blow in from § 38.10. Disqualification is disqualification no matter how it is enforced. If disqualification is the actual injury, as Florida Family argues, the relief it seeks in this lawsuit would not

25

redress that injury.  We express no view on the merits of Florida Family's constitutional argument but decide only that, as the punch line goes, "you can't get there from here."

## IV.

Because Florida Family's claims are not redressable, the district court lacked jurisdiction to decide the merits of its claims.  We vacate the district court's order of dismissal on the merits and remand with instructions for it to dismiss the case for lack of subject matter jurisdiction.

**VACATED and REMANDED.**