Amanda **BARRS**, Kathryn England, Holly Reeves, Stephanie Royall, and all others similarly situated, Plaintiffs,

v.

The **SOUTHERN CONFERENCE**, Defendant.

Civil Action No. 2:10–cv–01227–AKK.

United States District Court, N.D. Alabama, Southern Division.

Aug. 10, 2010.

Alicia K. Haynes, Kenneth D. Haynes, Haynes & Haynes P.C., Birmingham, AL, for Plaintiffs.

Franklyn C. Steinberg, III, Steinberg Law LLC, Somerville, NJ, Mac M. Moorer, Madeline H. Haikala, Lightfoot Franklin & White LLC, Birmingham, AL, for Defendant.

### ORDER

ABDUL K. KALLON, District Judge.

The court has before it The Southern Conference's ("Defendant") Motion to Dismiss. Doc. 15. Amanda Barrs, Kathryn England, Holly Reeves, and Stephanie Royall ("Plaintiffs") responded, (doc. 20), and Defendant replied, (doc. 21). This matter is now ripe for resolution. For the reasons stated below, the motion is DENIED.

### I. PROCEDURAL HISTORY

Plaintiffs are former members of Samford University's softball team, who graduated in May 2010. Doc. 1 ¶¶ 8–11; Doc. 20–1 at 7. On May 11, 2010, Plaintiffs filed a complaint and a motion for a preliminary injunction, which requested that this court order Defendant to expand its post-season softball tournament, scheduled to begin on May 13, 2010, from four to eight teams. Doc. 1; Doc. 2. In 2009, in an effort to cut costs, Defendant reduced the number of teams advancing to post-season tournaments in men's and women's soccer, men's and women's tennis, women's volleyball, and women's softball. Doc. 1 ¶ 32. Plaintiffs allege that this decision disproportionately affected female student athletes and contend that the reduction violates Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"). Doc. 1; Doc. 2. Determining that Plaintiffs failed to demonstrate that they had a likelihood of success on the merits, that they would suffer irreparable harm, that the balance of equities tipped in their favor, or that an injunction was clearly in the public interest, the court denied the preliminary injunction on May 13, 2010. Doc. 8.

Defendant now moves the court to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), arguing that (1) the court lacks subject matter jurisdiction because Defendant is not liable under Title IX, (2) the case is moot because Plaintiffs have now graduated, and (3) Plaintiffs also fail to state a claim because Defendant is not liable under Title IX.

### II. STANDARD OF REVIEW

#### A. Challenge to Subject Matter Jurisdiction under Rule 12(b)(1)

"Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, 'facial' and 'factual' attacks." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n. 5 (11th Cir.2003) (citation omitted). Facial attacks are based on the allegations in the complaint, which the court must take as true in deciding whether to grant the motion. *Id.* Factual attacks challenge subject matter jurisdiction "in fact, irrespective of the pleadings," and the court "may consider extrinsic evidence" in ruling on a factual challenge. *Id.* In such a case, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Id.* at 925 (citation omitted). However, a court may only find that it lacks subject matter jurisdiction "if the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of action.*" *Id.* (cita-

tions omitted) (emphasis in original). When a jurisdictional challenge implicates the merits of plaintiff's claim, the court must "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* (citations omitted). This ensures "a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion." *Id.* (citations omitted) (alterations in original).

### B. Failure to State a Claim under Rule 12(b)(6)

Rule 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level ...." (citation omitted)). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950.

On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations as true. *See, e.g., Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir.2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal,* 129 S.Ct. at 1950.

### III. ANALYSIS

### A. Defendant's Liability Under Title IX Does Not Implicate the Court's Subject Matter Jurisdiction.

■ Defendant asserts both facial and factual challenges to the court's subject matter jurisdiction under Rule 12(b)(1). However, because Defendant's arguments address the merits of Plaintiffs' case, rather than jurisdiction, the challenge fails and the court need not consider the facial and factual arguments separately.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Defendant argues that Plaintiffs' claim fails under Rule 12(b)(1) because, according to Defendant, it does not receive federal financial assistance and, therefore, is not an entity subject to liability under Title IX. Doc. 16 at 7.

In *Amway,* the Eleventh Circuit rejected a similar argument. The defendant in *Amway* argued that the plaintiff was not an "eligible employee" under the Family Medical Leave Act because the defendant did not employ the requisite number of employees. 323 F.3d at 923. The Eleventh Circuit concluded that the district court should have addressed the issue under Rule 56(c),[1] instead of Rule 12(b)(1):

because the district court examined evidence outside of the pleadings. *Id.* at 924.

---

1. The Eleventh Circuit noted that it would have been inappropriate for the district court to consider the question under Rule 12(b)(6)

"We have cautioned ... that the district court should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of action.*' " *Id.* at 925 (citing *Garcia v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256, 1261 (11th Cir.1997)). Furthermore, when "a jurisdictional issue [is] intertwined with the underlying merits," the issue "is properly reserved for the finder of fact." *Id.* at 927–28 (finding that since "eligible-employee status under the FMLA is a threshold jurisdictional question ... that also appears to be a prima facie element for recovery in a civil action," the district court erred when it dismissed the case pursuant to Rule 12(b)(1)).

The Eleventh Circuit reached the same conclusion previously in *M.H.D. v. Westminster Schs.,* 172 F.3d 797 (11th Cir. 1999), a case in which the plaintiff claimed that a school's tax-exempt status constituted "Federal financial assistance" within the meaning of Title IX. The district court disagreed and dismissed the case for want of subject matter jurisdiction. *Id.* at 801. Although affirming the district court on other grounds, the Eleventh Circuit found that the district court erred when it considered Defendant's funding status under a jurisdictional analysis:

> When a party claims a right that arises under the laws of the United States, a federal court has jurisdiction over the controversy. If the court concludes that the federal statute provides no relief, as is true in this case, then it properly dismisses that cause of action for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or 12(c).... Dismissal for want of subject matter jurisdiction is inappropriate in such an instance unless the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." [*Bell v. Hood,* 327 U.S. 678,

682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ].

*Id.* at 802 n. 12 (citations omitted) (further concluding that the plaintiff's argument that the defendant's tax-exempt status made it subject to Title IX was not immaterial or wholly frivolous; *see also Morrison v. Nat'l Australia Bank Ltd.,* —— U.S. ——, 130 S.Ct. 2869, 2877, 177 L.Ed.2d 535 (2010) (explaining that a statute's extraterritorial reach raises a merits question and not a question of subject matter jurisdiction); *Ayres v. Gen. Motors Corp.,* 234 F.3d 514, 519 n. 9 (11th Cir.2000) (noting that a plaintiff's failure to establish a violation of the federal mail and wire fraud statutes did not deprive the court of subject matter jurisdiction).

This case falls squarely within *Amway* and *M.H.D.* To establish liability under Title IX, Plaintiffs need to prove as an element of their case that Defendant is a Title IX funding recipient. *See Williams v. Bd. of Regents of Univ. Sys. of Ga.,* 477 F.3d 1282, 1293 (11th Cir.2007). Whether Defendant receives Title IX funding necessarily implicates the merits of Plaintiffs' case and, therefore, is an issue this court cannot consider under Rule 12(b)(1). *Amway,* 323 F.3d at 925.

Furthermore, as in *M.H.D.,* Plaintiffs' claim is not so wholly insubstantial and frivolous that subject matter jurisdiction is inappropriate. As addressed more fully in Section III.C. below, the Eleventh Circuit has suggested, in circumstances similar to those present here, that entities may be liable under Title IX even if they receive federal funding indirectly. *See, e.g., Williams,* 477 F.3d at 1294 ("Williams has alleged that UGA, a funding recipient, has ceded control over one of its programs, the athletic department, to UGAA and provided extensive funding to UGAA. Notably, the [Supreme] Court has not resolved whether this is sufficient to make an entity

a funding recipient subject to Title IX liability." (citations omitted)). Plaintiffs' complaint states:

> Because the Southern Conference and its member schools receive federal financial assistance (directly or indirectly); because the Southern Conference governs, regulates, operates, and controls an educational activity that receives federal financial assistance (i.e., intercollegiate athletics); and because the member schools delegate and assign the authority to do so to the Southern Conference, the Southern Conference and its member schools are subject to and must comply with Title IX.

Doc. 1 ¶ 17. The complaint sufficiently alleges that Defendant is an indirect recipient of federal funding. In light of *Williams,* Plaintiffs' allegation that Title IX applies to Defendant is not frivolous or wholly insubstantial and, therefore, this court has subject matter jurisdiction over the case.[2]

**B. Because Plaintiffs Request Damages, the Controversy Is Not Moot.**

■ Defendant further argues that the court lacks subject matter jurisdiction because Plaintiffs' graduation mooted the case. Doc. 16 at 13–15. Plaintiffs correctly concede that their claims for injunctive and declaratory relief are now moot, but they argue that their damages claim remains viable. Doc. 20–1 at 8. In response, Defendant contends that Plaintiffs may not obtain damages against a non-recipient of federal funds. Doc. 21 at 10–11. However, Defendant's contention that damages are unavailable against it because it is not a recipient of federal funds assumes that Defendant is not a Title IX funding recipient, which is a legal conclusion that the court is unable to reach at this juncture.

■ Assuming Plaintiffs can establish that Defendant is a Title IX funding recipient, "a damages remedy is available for an action brought to enforce Title IX." *Franklin v. Gwinnett County Public Schs.,* 503 U.S. 60, 76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). While a student athlete's graduation will render her claims for declaratory or injunctive relief moot, *see, e.g., Cook v. Colgate University,* 992 F.2d 17, 19 (2d Cir.1993), her graduation does not moot her claim for damages. *Pederson v. La. State Univ.,* 213 F.3d 858, 875 (5th Cir.2000) (graduation mooted student-athletes' claims for injunctive relief but not their claims for damages); *see also Granger v. Klein,* 197 F.Supp.2d 851, 879 (E.D.Mich.2002) ("Plaintiff has graduated from the High School, but has requested damages. A viable claim for damages generally avoids mootness of the action."); *Logan v. Gary Cmty. Sch. Corp.,* 2008 WL 4411518, at *3 (N.D.Ind. Sept. 25, 2008) ("Because Plaintiff is no longer a student at West Side High School, an attempt to enjoin enforcement of the school rule, with nothing further, would be moot.... But, because he seeks damages ... those counts are not moot." (citations omitted)).[3]

---

2. Defendant also seeks to frame its argument as a challenge to Plaintiffs' standing: "Plaintiffs lack constitutional standing to pursue their Title IX claim because their claim operates from the erroneous premise that the Conference is a proper Title IX defendant from which the plaintiffs may obtain relief. It is not. Consequently, a favorable judgment will not redress the plaintiffs' alleged injury." Doc. 16 at 7 (citing *Fla. Family Policy Council v. Freeman,* 561 F.3d 1246, 1253 (11th Cir.2009)). Defendant misconstrues the redressability requirement. To win their case,

Plaintiffs must first prove that Defendant is a Title IX funding recipient. If they do so and further prove a Title IX violation, then they will be entitled to recovery from Defendant. This case presents no redressability issue.

3. Moreover, the cases cited by Defendant are inapposite because, in those cases, the plaintiffs did not request damages or the court had already dismissed the plaintiffs' damages claims. *See Cook,* 992 F.2d at 19 (plaintiffs did not appeal district court's denial of damages); *McFarlin v. Newport Special Sch. Dist.,* 980 F.2d 1208 (8th Cir.1992) (plaintiff only

Consequently, while Plaintiffs' graduation moots their claims for declaratory and injunctive relief, their claim for damages remains viable.

### C. Plaintiffs' Complaint States a Claim.

■ Defendant further asserts that dismissal is warranted under Rule 12(b)(6) because it is not a Title IX funding recipient. However, because Plaintiffs allege that Defendant is an indirect recipient of Title IX funding, their complaint states a claim for which relief may be granted.[4]

Section 901(a) of Title XI, 20 U.S.C. § 1681(a), provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." The phrase a "program or activity" is defined to include "all of the operations of . . . a college, university, or other postsecondary institution, or a public system of higher education . . . any part of which is extended Federal financial assistance." 20 U.S.C. § 1687(2)(A). The definition further extends to entities "principally engaged in the business of providing education," 20 U.S.C. § 1687(3)(A)(ii), and entities created by two or more covered entities, 20 U.S.C. § 1687(4). The United States Department of Health, Education and Welfare defines recipient as:

any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution, or organization, or other entity, or any person, to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives such assistance, including any subunit, successor, assignee, or transferee thereof. 34 C.F.R. § 106.2(i).

In *NCAA v. Smith,* the Supreme Court concluded that the NCAA's receipt of dues from its members did not trigger Title IX coverage. 525 U.S. 459, 468, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999). The Court expressly declined to consider two alternate theories for holding the NCAA liable under Title IX, which the plaintiff raised for the first time on appeal: (1) the recipients ceded controlling authority over federally funded programs to the NCAA, and (2) the NCAA indirectly or directly received federal funding through the National Youth Sports Program ("NYSP"). *Id.* at 469–70, 119 S.Ct. 924.

Citing primarily to Third Circuit cases on the NCAA's potential Title IX liability, Defendant urges the court to find that Defendant lacks "controlling authority" over its members schools sufficient to bring it within Title IX's ambit. In *Cureton v. NCAA,* the Third Circuit found that the NCAA was not a Title VI[5] recipient and noted: "[W]e cannot understand how the fact that the NCAA promulgates rules and regulations with respect to intercollegiate athletics somehow means that the

---

appealed order denying motions for a temporary restraining order and preliminary injunction; plaintiff continued to have a live claim for damages); *Gomes v. R.I. Interscholastic League,* 604 F.2d 733, 736 (1st Cir.1979) (determining that high school student's graduation mooted the controversy and noting "since [plaintiff] has not sought any monetary relief, nothing that we might decide now as to the merits would affect his rights vis a vis defendants").

4. Plaintiffs concede in their response that Defendant does not receive direct federal financial assistance. Doc. 20–1 at 6.

5. With respect to defining a recipient of federal financial assistance, Title VI cases are instructive for Title IX because of the similarities between the two statutes. *Cureton v. NCAA,* 198 F.3d 107, 118 (3d Cir.1999).

NCAA has controlling authority over its members' programs or activities receiving Federal financial assistance. After all, the institutions decide what applicants to admit, what employees to hire, and what facilities to acquire." 198 F.3d 107, 118 (3d Cir.1999). The Third Circuit reached the same result in *Smith* on remand from the Supreme Court. *Smith v. NCAA,* 266 F.3d 152 (3d Cir.2001). In that case, however, the court concluded that the plaintiff should be permitted to amend her complaint to add allegations that the NCAA and the NYSP, which received financial assistance, were "virtually indistinct" because the NCAA "truly assumed control" of the NYSP, including control of the decision to receive federal funds. *Id.* at 162 (citations and internal quotation marks omitted); *see also Bowers v. NCAA,* 118 F.Supp.2d 494, 527 n. 25 (D.N.J.2000) (rejecting "controlling authority" argument with respect to the NCAA); *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n Ill., Inc.,* 134 F.Supp.2d 965, 970–72 (N.D.Ill. 2001) (rejecting "controlling authority" theory with respect to a state amateur hockey association).

Crucially, however, in an opinion postdating *Cureton* and the Third Circuit's *Smith* opinion on remand, the Eleventh Circuit considered whether the University of Georgia ceded control over its athletic department to the University of Georgia Athletic Association, which did not directly receive federal funds. *Williams,* 477 F.3d at 1294. While not definitely resolving the issue, the court stated: "We are persuaded . . . by the analysis of the Western District of Michigan, noting that if we allowed funding recipients to cede control over their programs to indirect funding recipients but did not hold indirect funding recipients liable for Title IX violations, we would allow funding recipients to receive federal funds but avoid Title IX liability." *Id.* (citing *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n,* 80 F.Supp.2d 729, 733–34 (W.D.Mich.2000)).[6] The court concluded that the plaintiff's complaint sufficiently alleged control, thus satisfying the federal funding element of her claim, and left "for the discovery process and the district court to determine whether to treat UGAA like a funding recipient." *Id.*

Plaintiffs allege that Defendant "governs, regulates, operates, and controls" the intercollegiate athletics of its member schools and those schools "delegate and assign the authority to do so" to Defendant. Doc. 1 ¶ 17. Accepting these facts as true, the court concludes that, as in *Williams,* Plaintiffs sufficiently allege that Defendant is a Title IX funding recipient to survive a motion to dismiss. Plaintiffs are entitled to discovery to determine whether the evidence substantiates their theory.[7]

---

6. In *Communities for Equity,* the plaintiff argued that the Michigan High School Athletic Association ("MHSAA"), the body that administered interscholastic athletic programs throughout the state, discriminated against female athletics by providing fewer or less desirable athletic opportunities. The court denied defendant's motion for summary judgment, concluding that material issues of disputed fact existed regarding the extent of MHSAA's control over interscholastic athletics. 80 F.Supp.2d at 733–38.

7. Defendant, citing to various websites, further argues that it "functions similarly" to the NCAA, thereby suggesting that the court should follow the Third Circuit's *Smith* and *Cureton* opinions. Doc. 21 at 7–8 n. 3. On a motion to dismiss, the court must confine its review to the pleadings and documents attached thereto. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284 (11th Cir.2007). Therefore, the court cannot consider the information contained in the websites to determine whether Defendant is correct that its member schools, like the NCAA's member schools, have not ceded their authority to Defendant.

### D. Plaintiffs Must Seek Leave to Amend Their Complaint.

The court notes that, throughout their response, Plaintiffs suggest that the court should not dismiss their complaint because they intend to (1) amend it to add other defendants, including Defendant's member schools, and (2) move for class certification. *See* Doc. 20 at 1–2; Doc. 20–1 at 3, 9–10. "A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Therefore, Plaintiffs had until July 8, 2010, to amend their complaint without the court's leave. Now, Plaintiffs may only amend their complaint with Defendant's consent, which appears unlikely, or the court's permission. Fed. R. Civ. P. 15(a)(2). If Plaintiffs wish to amend their complaint, they should seek leave to do so within twenty-one (21) days of the date of this Order. Furthermore, they should file a proposed amended complaint with their motion for leave.

Plaintiffs further indicate their intention to move for class certification "in order to obtain a declaratory judgment, preliminary and permanent injunctions, as well as monetary damages, attorneys' fees and costs, [and] any other remedies available at law." Doc. 20–1 at 9–10. However, under Eleventh Circuit precedent, Plaintiffs appear to be foreclosed from moving for class certification to obtain declaratory and injunctive relief because the named Plaintiffs' declaratory and injunctive claims are moot. *See Tucker v. Phyfer,* 819 F.2d 1030, 1033 (11th Cir.1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot.").[8] To expeditiously determine the proper scope of this action, *if* Plaintiffs still intend to file a motion for class certification on all the grounds outlined in their response, Plaintiffs should file a brief within twenty-one (21) days of the date of this Order explaining why *Tucker* does not preclude them from pursuing class claims for declaratory and injunctive relief.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is DENIED. Nevertheless, the court is cognizant of the need to determine promptly the scope of this action. Therefore, if Plaintiffs wish to amend their complaint, they should seek leave to do so within twenty-one (21) days. Defendant's obligation to answer Plaintiffs' complaint is suspended until the court determines whether amendment is appropriate. Moreover, if Plaintiffs still contend that this case can and should be certified as a class action at some future point in the proceedings for both equitable and monetary relief, Plaintiffs should file a brief within twenty-one (21) days explaining why class certification remains a viable option for declaratory and injunctive relief.

---

**8.** In *Tucker,* as here, the plaintiff still had a live claim for money damages when he moved for class certification. He could not, however, use class certification as a means of reviving his mooted equitable claims. *Id.* at 1035.